## Josiah Corbin *versus* John Brown *et al.*

In trespass *quare clausum* for filling up a trench dug by the plaintiff for the purpose of conducting water from a pond to his mill, the defendants pleaded in justification, that they had a right to erect a dam at the outlet of the pond, to raise the water there to any height they should see fit, and to draw off the water whenever they should see fit, for the use of their mill; wherefore they entered, &c.; to which the plaintiff replied, *de injuriâ*, &c. It was *held*, that evidence on the part of the defendants, that they had a right to a reasonable use of the water, and an instruction to the jury to that effect, would have been irrelevant to the issue joined, and therefore, the omission by the court to give such instruction was not a sufficient ground for granting the defendants a new trial.

TRESPASS for taking up the plaintiff's dams and causing the water detained by them, to run to waste; and also for filling up a trench made by him to conduct the water to his saw mill.

The defendants pleaded three pleas in justification, upon the two first of which no question was made at the argument. In the third they allege, that they are lawfully seised and possessed of the Dudley Woollen Manufactory, &c., and have and ought to have the free and uninterrupted use and benefit of a certain brook or water-course from Hayden pond, without any let or hindrance to their water privileges, for the purpose of working their machinery there; that in 1811 they acquired a right of erecting a dam at Hayden pond, to raise the water there to any height they should see fit, and also of putting into the dam a sluice or flume to draw off the water from the pond whenever they should see fit; and also the right of digging at the outlet of the pond, so as to drain the same, and also to turn into the pond a small brook, called Mansfield brook, running thereby; and that they then became seised and possessed of so much land at the outlet of the pond as might be necessary for the full enjoyment and exercise of all the rights and privileges before mentioned. Then they set forth their use of hese privileges until the plaintiff made his trench, which they say injuriously drew off, diverted and obstructed the water

preserved in their reservoir, and so prevented the same from passing down the natural channel to their manufactory ; wherefore they entered into the close &c. and filled up the trench, &c.

The plaintiff replied, *de injuriâ &c.*; so, in effect, traversing the rights set forth by the defendants.

On the trial, before *Putnam* J., it appeared that the defendants were the owners of a factory, grist and saw mill, all in Dudley. About two miles higher up the stream on which these mills are situate, the plaintiff has a saw mill, and about a hundred rods above the plaintiff's saw mill is a natural pond, called Hayden pond, from which, in its natural state, a small stream flowed ; so small in dry weather, as to be wholly insufficient for mill purposes, but in the spring, and after copious rains, it had water which might be employed in that way. In 1811 the defendants became the owners of the privilege first mentioned, and erected thereon a woollen factory, and at the same time they procured a conveyance to themselves from the owner of the land at the outlet of Hayden pond. The privilege of erecting and maintaining a dam across this outlet, by means of which the surplus waters in times of rain and freshets could be collected into Hayden pond as a reservoir, and the privilege of diverting the course of Mansfield brook into the pond, were obtained from the same person.

The defendants, in 1819, built a dam at the outlet of Hayden pond, so as to raise the water therein about eight feet, for the use of their mills, and at the same time turned into the pond the Mansfield brook, which before that time fell into the stream passing from the outlet of the pond, about twenty rods below the pond and before it entered the land of the plaintiff. The waters thus collected in the pond as a reservoir, were kept back by the owners of the factory, to be used when the natural flow of the streams should become insufficient for their purposes, and when their reservoirs below should become exhausted. The defendants had a large reservoir of about seventy acres, and sufficiently capacious to contain all the waters of the Hayden pond reservoir, situate above their factory and below all the plaintiff's dams, the waters in which reservoir were drawn off by the defendants before they began taking

Corbin
v.
Brown.

water from Hayden pond.  The defendants used these waters without interruption till 1826, when the plaintiff erected a saw mill about a hundred rods below Hayden pond, and at the same time cut a trench at some distance from the outlet of the pond, so deep as to be sufficient thereby to take off about three feet of the waters which would be reserved by the dam erected at the outlet.  This trench conducted the waters into a deep ravine or basin, and from thence a trench was dug by the plaintiff to his saw-mill pond.  In the latter trench he placed a flume, which being kept closed, would, as the plaintiff contended from the evidence, keep up the waters in the ravine and also in Hayden pond, to the height to which the waters would then be raised by the dam at the outlet.

It appeared also, that the plaintiff had an ancient privilege of watering his mowing land below Hayden pond and near his saw mill, at any and all times ; and the detention of the water above in Hayden pond, as the plaintiff contended upon the evidence, prevented his usual enjoyment of this privilege.

The defendants contended, that it was lawful to detain water to some extent, as this right is indispensable to the enjoyment of mill power ; that when water is detained for mill purposes, the only question is, whether it is unreasonably detained, to the injury of a proprietor lower down the stream ; that if the jury should be satisfied that the plaintiff's mill was more benefited than injured by the defendant's reservoir, he had no ground of complaint, and therefore could have no right to draw off the reserved water or to keep a trench open for that purpose ; that the diversion of Mansfield brook was not distinguishable from a detention of the water by a dam across the brook, and could not be complained of, as all the water did eventually flow to the plaintiff's mill.

The judge instructed the jury, that the plaintiff, being no party to the contract by which the defendants became the owners of the outlet of Hayden pond, was not to be affected thereby, but was entitled to the run of the water as in its natural state ; that the defendants could not lawfully divert Mansfield brook into that pond, to the prejudice of the plaintiff, without his consent ; that the plaintiff had a right, by digging a trench into and tapping the pond, to secure and pre-

serve as much water as would have flowed to his saw mill, if there had not been any diversion of the brook into the pond; that as the defendants had diverted the brook into the pond, so mingling the waters without the consent of the plaintiff, the jury should take care that the plaintiff should be permitted to take his full quantity of water as he pleased and when he pleased, but that if by means of the trench he drew more than he would have had by the natural run of the waters, then he went beyond his right; that if the trench had the capacity to take off the water from the surface of the pond, but was not used by the plaintiff to the prejudice of the defendants, any further than to obtain as much water as would have run in the natural streams, then it was not a nuisance and the defendants had no right to abate it; but that otherwise they had; leaving it to the jury to determine what quantity of water the plaintiff would have obtained by the natural run of the streams, and what he did obtain by means of the trench which he opened into Hayden pond.

After the cause was summed up, in consequence of a misapprehension on the part of the counsel, time was allowed to the defendants to produce evidence on the question, whether the plaintiff had in fact drawn off any water from the Hayden pond reservoir; and the defendants afterwards offered evidence, a part of which was rejected by the judge. The jury found a verdict against the defendants, for filling up the trench made by the plaintiff.

If the evidence rejected ought to have been admitted, or if any of the instructions to the jury were erroneous, a new trial was to be granted; otherwise judgment was to be rendered on the verdict.

The cause was argued by *J. Davis* and *Barton* for the defendants, and *Merrick* and *Tufts* for the plaintiffs.

PUTNAM J. delivered the opinion of the Court. The defendants justify entering upon the plaintiff's land and filling up a trench which he had made there, because, as they allege, the trench was a nuisance to them, inasmuch as it was made, and was in fact used, for the purpose of taking off the water from heir reservoir in Hayden pond.

The case finds that the plaintiff had an ancient privilege of

*Corbin v. Brown.*

*Oct. 8th, 1832.*

*Oct. 5th, 1833.*

watering his mowing land below Hayden pond and near his saw mill, at any and all times. This finding was the result of the evidence at the trial, which clearly proved that the plaintiff and those under whom he claims, have used this right of irrigation for more than forty years ; and that it was so used immediately after haying.

The defendants' dam at the outlet of Hayden pond, for a reservoir, was built in 1819. The trench was dug by the plaintiff in 1825, for the purpose of getting the water, and as much as would have run in its natural courses, to his saw-mill pond, but his saw mill was not built until 1826 ; though the dam to his pond there was built before that time and was used to raise a head of water for the purposes of irrigation. The trench had the capacity to take off three feet of the surface of the Hayden pond reservoir, if the flumes which were in it were kept open. There was contradictory evidence as to the quantity of water which the plaintiff in fact obtained by means of the trench. The jury were instructed as is set forth in the report of the case.

But the defendants contend that the instruction should have been, " if the water had not been unreasonably detained, the plaintiff had no right to open the trench into Hayden pond and take off the water ; that they had a right to detain the water to *some extent* ; that such a right is indispensable to the enjoyment of mill power ; and that when water is detained for mill purposes only, the question is, whether it is, or not, unreasonably detained, to the injury of the proprietor lower down the stream ; and that as the waters of Mansfield brook and of Hayden pond were united before they reached the plaintiff's dam, the detention of the water as the defendants detained it, was in no way to be distinguished from a detention by a dam across Mansfield brook, as it all eventually ran to the plaintiff's mill pond."

The defendants in effect requested such instruction to be given to the jury. But we are now to take it that such instruction was not given, but only the instruction which is above set forth.

It has been said at this argument, that at the trial not much attention was paid to the pleadings, either by the counsel o

by the court. That was the fact ; and .it is to be regretted that more attention was not paid to the issue joined by the parties upon this part of the case. It would have prevented much controversy. We must look now into the whole record, and if such instruction should have been given, as the defendants contended for, a new trial should be granted. If it would have been irrelevant to the issue, it would seem to be equally clear that the court ought not to have given it.

Now the defendants, in their third plea, claim a right to dam and pen up the water in Hayden pond as high as they please, and to draw it off whenever they think fit. This right is denied by the plaintiff, in his replication.

The defendants do not, even in argument, contend for such a right, but only for a modified or qualified right to detain the water for mill purposes, in a reasonable manner. Their counsel requested the judge to instruct the jury, that they had a right to detain it to some extent, in a reasonable manner, for mill power. But if the jury had been so instructed, of what benefit would it have been to the defendants ? How could the qualified right to use the water reasonably, so as not to prejudice the proprietors below, maintain the absolute right to draw off the water just when they saw fit to do so, with or without reason, just as it should please themselves ? The claim set up by the defendants in their plea, is subversive of the prescriptive right of the plaintiff to use the water as heretofore he has done, for the purpose of irrigation, as well as of his right to the use of .it for mill purposes, upon his own land. The jury could not find a verdict for the defendants upon this issue, without affirming an unlimited right in them to detain the water *ad libitum*. If the defendants do not maintain such a right, they must fail. The jury must find that they did the alleged trespass for the cause or reason by them set forth. The burden of proof is upon them. Any other right short of that pleaded in justification, could not have been properly given in evidence, or have been declared by the court in their charge to the jury, as relevant, or as a sufficient matter of defence for the defendants.

In this view of the case the inquiry that was made towards the close of the cause, and after the charge had commenced,

was wholly immaterial; for if the defendants failed to establish by proof the right set forth as their justification, it was a matter of no consequence to settle, whether the plaintiff drew more or less water through the trench, than would have passed in the natural run of the brooks.

It may be said that the proof of a qualified right might weigh with the jury in regard to the damages, as it would rebut any claim as for a wanton trespass; but the jury have given only nominal damages.

All that the jury have affirmed in their verdict is, that the defendants have not an absolute unqualified right to stop and pen up the waters of Mansfield brook and Hayden pond without any regard to the plaintiff's right to the use of the same for irrigation and mill power. And as before observed, the defendants themselves do not, even in argument, contend that they have such an unqualified right as they have set forth in their plea. A new trial would clearly be of no utility to the defendants as the facts and the pleadings now stand.

And in this stage of the cause the Court would not be disposed to allow the defendants to plead new matter of justification. If the parties are disposed to litigate this subject fur'' r hereafter in any other action, the precise rights which the defendants now claim may be raised by the pleadings, and the Court is not inclined to anticipate the opinions that may be given when the points may be more properly presented.

*Morton* J. dissented.

*Judgment according to verdict.*